**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **KRISTIN TRAVIS**, individually; as parent, guardian, and next friend of **KALIYAH WOODS**, a minor; and on behalf of all others similarly situated, | ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 14 cv 9094 |
| **NUTEK DISPOSABLES, INC.**; **FIRST QUALITY ENTERPRISES, INC.**; and **FAMILY DOLLAR STORES, INC.**, | ) ) ) ) | |
| Defendants. | ) | Jury Trial Demanded |

# CLASS ACTION COMPLAINT

Plaintiff KRISTIN TRAVIS, individually; as parent, guardian, and next friend of KALIYAH WOODS, a minor; and on behalf of all others similarly situated, by and through her counsel at Zimmerman Law Offices, P.C., brings this action against Defendants NUTEK DISPOSABLES, INC., FIRST QUALITY ENTERPRISES, INC., and FAMILY DOLLAR STORES, INC., as follows:

## NATURE OF THE CASE

1. Defendant Nutek Disposables, Inc. ("Nutek") announced on October 25, 2014, that it initiated a nationwide voluntary product recall at the retail level of all lots of baby wipes that it manufactured under numerous brand names (the "Products"), including Kidgets baby wipes, due to the presence of bacteria called Burkholderia cepacia (B. cepacia) on the wipes.

2. Specifically, on or about October 25, 2014, Nutek issued a Press Release alerting consumers that:

Nutek Disposables, Inc. of McElhattan, PA has initiated a nationwide voluntary product recall at the retail level of all lots of baby wipes that it manufactured under the brand names Cuties, Diapers.com, Femtex, Fred's, Kidgets, Member's Mark, Simply Right, Sunny Smiles, Tender Touch, and Well Beginnings, because some packages may contain bacteria. These wipes were distributed by Nutek prior to October 21, 2014 to the following retail stores: Walgreens, Sam's Club, Family Dollar, Fred's, and Diapers.com.

After receiving a small number of complaints of odor and discoloration, Nutek conducted microbial testing that showed the presence of a bacteria, called Burkholderia cepacia (B. cepacia), in some of these products. Soon after, on October 3, 2014 the company initiated a voluntary withdrawal of lots that had tested positive for the bacteria, as well as other baby wipes in the surrounding time frame. After some additional lots were tested, as a precautionary measure, Nutek believed it was a prudent decision to withdraw all its baby wipe products.

B. cepacia poses little medical risk to healthy people. However, people who have certain health problems like weakened immune systems or chronic lung diseases, particularly cystic fibrosis, may be more susceptible to infections with B. cepacia. If you believe you have a weakened immune system or chronic lung disease and you have used one of the affected wipe products, you should call your doctor promptly for medical advice.

As of October 3, 2014, the date of the original withdrawal, the company had received only one report of irritation. Numerous reports of complaints have since been received by the company that include rash, irritation, infections, fever, gastro-intestinal issues, and respiratory issues, though these reports have not been confirmed to be related to the use of these products.

The company has not identified the cause of the problem, but is continuing to investigate. In the interim, Nutek has stopped shipping baby wipes manufactured at the facility.

Nutek takes the safety of consumers and the quality of its products very seriously and is taking all appropriate steps to address the issue and ensure this does not happen again.

The company is working with the U.S. Food & Drug Administration and the affected retailers and distributors throughout this process to address the issue.

3. Although Nutek issued this recall on October 25, 2014, it had knowledge of the problem long before that. Indeed, conceded in the above statement on October 3, 2014, Nutek initiated a voluntary withdrawal of lots that had tested positive for the bacteria. Furthermore, Walmart's Sam's Club stores issued a recall of baby wipes manufactured by Nutek on October 10, 2014, due to B. cepacia contamination of those baby wipes.

4.     The Products that are the subject of the recall were designed, marketed, manufactured, distributed, and sold by Defendants Nutek, First Quality Enterprises, Inc. ("First Quality"), and Dollar Stores, Inc. ("Family Dollar") across the United States, including in Illinois.

5.     The presence of any bacteria in baby wipes is of great public concern, as it primarily, although not exclusively, affects infants and very young children who are more susceptible to infections and less able to fight off infections due to their immature and developing immune systems.

6.     The recall involves tens of thousands (if not hundreds of thousands) of dangerous baby wipes that were, or should have been, the subject of the October 25, 2014 recall, and the thousands of individuals, including children and families, who have been harmed by Defendants' conduct.

7.     Defendants did not adequately monitor the manufacture, design, and sale of the Products, and allowed the defective and hazardous Products to be sold in the United States, thereby posing extreme dangers to children and adults.

8.     As a result of Defendants' conduct, Plaintiff and the Class members have been injured in the form of serious health problems and continued health risks, resulting incidental and consequential damages due to the defective and dangerous Products, and financial damages resulting from the purchase of defective—and therefore worthless—Products.

## JURISDICTION AND VENUE

9.     Jurisdiction over Defendants is proper because they conducts business within this judicial district. Specifically, Defendants have distributed, marketed, and sold the Products in

this District. Therefore, Defendants have the minimum contacts necessary to fall under the jurisdiction of this Court.

10.     Pursuant to 28 U.S.C. § 1332(d)(2), this Court has subject matter jurisdiction over this class action, because the amount in controversy exceeds $5 million, exclusive of interest and costs, and some members of the Class are citizens of states different than Defendants.

11.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because this is the District in which the transaction, or some part thereof occurred, and Defendants are corporations doing business in this District.

## **PARTIES**

12.     At all relevant times, Plaintiff Kristin Travis was a natural person and citizen of the State of Illinois.

13.     At all relevant times, Minor Plaintiff Kaliyah Woods was Kristin Travis' daughter, and a citizen of the State of Illinois.

14.     Defendant Nutek is a corporation incorporated and existing under the laws of the State of Pennsylvania, with its principal place of business at 121 North Road, Mc Elhattan, Pennsylvania 17748.  Nutek does business in this District, and nationwide.

15.     Defendant First Quality is a corporation incorporated and existing under the laws of the State of Pennsylvania, with its principal place of business at 80 Cuttermill Road, Suite 500, Great Neck, New York 11021.  At times relevant herein, First Quality was the parent and owner of Nutek, and does business in this District, and nationwide.

16.     Defendant Family Dollar is a corporation incorporated and existing under the laws of the State of Delaware, with its principal place of business at 10401 Monroe Road, Matthews, North Carolina 28201.  Family Dollar does business in this District, and nationwide.

4

## BACKGROUND AND FACTUAL ALLEGATIONS

17.     Plaintiff Kristin Travis ("Plaintiff"), purchased packages of Kidgets baby wipes in question at a Family Dollar retail store for use on her minor daughter Kaliyah Woods ("Minor Plaintiff"), who was approximately twenty-three (23) months old at the time. The Minor Plaintiff subsequently became ill due to a bacterial infection that is consistent with the potential illnesses caused by B. cepacia described in the recall.  Upon information and belief, the defective Products caused her illness.

18.     Kidgets baby wipes, which are manufactured by Nutek, are sold in the following packaging:



19.     On the packaging, Nutek represents, *inter alia*, that Kidgets are "hypoallergenic."

20.     Indeed, all of the Products represent that they are "hypoallergenic."

21.     Although the term "hypoallergenic" lacks a medical definition, it is in common usage and found in most standard English dictionaries.

22.     The term "hypoallergenic" is defined as "designed to reduce or minimize the possibility of an allergic response, as by containing relatively few or no potentially irritating substances."[1]

23.     However, the Products were not "hypoallergenic," as they contained a significantly irritating substance—the bacteria B. cepacia.  Nutek conducted tests and confirmed that the Products contained the bacteria B. cepacia.

24.     B. cepacia poses a health risk to certain individuals, including children and others with weakened immune systems, as it causes infections.  Additionally, B. cepacia bacteria are often resistant to common antibiotics.

25.     In or about October 18, 2014, Plaintiff purchased Kidgets baby wipes from Family Dollar.

26.     Plaintiff purchased Kidgets baby wipes for use on the Minor Plaintiff.

27.     Prior to purchasing Kidgets baby wipes, Plaintiff read the Kidgets baby wipes packaging, and relied on Defendants' representation that Kidgets were "hypoallergenic" and would therefore not irritate the Minor Plaintiff.

28.     Shortly after using Kidgets baby wipes on Minor Plaintiff, Minor Plaintiff developed a bacterial infection, which caused boils to develop on Minor Plaintiff.

29.     Plaintiff took Minor Plaintiff to the hospital for treatment.  At the hospital, doctors had to cut the boils to drain them, causing Minor Plaintiff great pain and suffering.  Furthermore, this procedure caused scarring on Minor Plaintiff where the doctors made incisions.

30.     Since Minor Plaintiff's procedure, Plaintiff has had to expend additional money on follow-up care and medical supplies, including bandages and ointment.

---

[1] http://www.merriam-webster.com/dictionary/hypoallergenic

31.     Upon information and belief, Minor Plaintiff's bacterial infection was caused by the B. cepacia that was present on the Kidgets baby wipes that Plaintiff purchased from Family Dollar.   Indeed, Minor Plaintiff's symptoms are consistent with the risks listed in the recall notice, as well as warnings published by the U.S. Centers for Disease Control and Prevention.

32.     Nutek stated that it received numerous reports that other individuals who used the Products have developed rashes, irritation, and fever due to the presence of B. cepacia on the Products.

33.     Had Plaintiff and the Class members known that the Products contained B. cepacia, or otherwise were not "hypoallergenic," they would not have purchased the Products.

## CLASS ALLEGATIONS

34.     **Class Definition**: Plaintiff brings this action, individually on behalf of similarly situated purchasers and users of the Products, pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure.   The proposed Classes are defined as:

> **Economic Damages Class**:  All persons in the United States who suffered economic or financial damages as a result of the purchase or use of the Products.

> **Personal Injury Class**:  All individuals who suffered personal injuries and resulting damages as a result of the use of the Products.

Excluded from the Classes are: (1) Defendants, Defendants' agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendants or their parents have a controlling interest, and those entities' current and former employees, officers, and directors; (2) the Judge to whom this case is assigned and the Judge's immediate family; (3) any person who executes and files a timely request for exclusion from the Class; (4) any person who has had their claims in this matter finally adjudicated and/or otherwise released; and (5) the legal representatives, successors and assigns of any such excluded person.

35.     **Numerosity**: Upon information and belief, the Classes comprise hundreds, if not thousands, of consumers throughout the nation, and is so numerous that joinder of all members of the Classes is impracticable.   While the exact number of Class members is presently unknown

and can only be ascertained through discovery, Plaintiff believes that there are hundreds, if not thousands, of Class members based upon the number of Products recalled, the fact that Nutek received numerous complaints about the Products, and the large number of stores at which the Products are sold. Class members can be easily identified through Defendants' records.

36. **Commonality and Predominance**: There are several questions of law and fact common to the claims of the Plaintiff and members of the putative Classes, which predominate over any individual issues, including:

a. Whether the Products are defective;

b. Whether any Defendant knew the Products were defective but still distributed and sold the Products;

c. Whether Defendants concealed or failed to disclose the Products' defects;

d. Whether Nutek and First Quality owed Plaintiff and Class members a duty of care in the design, manufacture, distribution, and sale of the Products;

e. The scope of the duty Nutek and First Quality owed to Plaintiff and Class members;

f. Whether Nutek and First Quality breached their duty of care to Plaintiff and Class members;

g. Whether Defendants misrepresented that the Products were hypoallergenic;

h. Whether the contaminated Products are harmful;

i. Whether Defendants breached express or implied warranties;

j. Whether Nutek and First Quality violated the consumer protection laws of all fifty states and the District of Columbia; and

k. Whether Plaintiff and Class members suffered damages, and if so, the nature and extent of those damages.

37. **Typicality**: Plaintiff's claims are typical of the claims of the Classes. All claims are based on the same legal and factual issues.

38.     **Adequacy of Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Classes.  Plaintiff does not have any interests antagonistic to those of the Classes.  Plaintiff has retained competent counsel experienced in the prosecution of this type of litigation.  The questions of law and fact common to the Class members predominate over any questions affecting only individual Class members.

39.     **Superiority**: A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  The expense and burden of individual litigation would make it impracticable or impossible for Class members to prosecute their claims individually. The trial and the litigation of Plaintiff's claims are manageable.

**COUNT I**
**Strict Liability**
**(*On behalf of Plaintiff and both Classes against Nutek and First Quality*)**

40.     Plaintiff repeats and re-alleges the allegations in Paragraphs 1-39 with the same force and effect as though fully set forth herein.

41.     Nutek and First Quality are engaged in the business of packaging, distributing and selling the Products to consumers.

42.     Nutek and First Quality placed the Products, including Kidgets baby wipes, into the stream of commerce.

43.     At the time the Products left Nutek's and First Quality's control and were placed into interstate commerce, the Products were defective and unreasonably dangerous because— unknown to consumers—the Products contained B. cepacia, a dangerous bacteria.

44.     The Products, including Kidgets baby wipes, were expected to and did reach Plaintiff and Class members without a substantial change in the condition in which they were sold.

45.     Plaintiff and Class members could not by the exercise of reasonable care have discovered that the Products contained B. cepacia, and were therefore unreasonably dangerous.

46.     Nutek and First Quality knew that the Productts would be used by consumers, including Plaintiff and Class members, without being inspected for this defect.

47.     Nutek and First Quality could have reasonably and without undue burden designed and manufactured the Products to be free of B. cepacia.

48.     The Products failed to perform as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner.

49.     The defective and unreasonably dangerous condition of the Products, including Kidgets baby wipes, was the direct and proximate cause of the damages suffered by Plaintiff and Class members described herein, including (a) physical injuries and the pain and suffering and emotional distress associated therewith; (b) financial damages; (c) medical bills; and (d) other miscellaneous incidental and consequential damages.

WHEREFORE, Plaintiff, individually and on behalf of the Classes, prays for an Order as follows:

a.      Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23, and certifying the Classes defined herein;

b.      Designating Plaintiff as representative of the Classes and her undersigned counsel as Class Counsel;

c.      Entering judgment in favor of Plaintiff and the Class members and against Nutek and First Quality;

d.      Awarding Plaintiff and the Class members actual damages, attorney's fees and costs, including interest thereon, as allowed or required by law; and

e.      Granting all such further and other relief as the Court deems just and appropriate.

## COUNT II
### Negligence
### (*On behalf of Plaintiff and both Classes against Nutek and First Quality*)

50.     Plaintiff repeats and re-alleges the allegations in Paragraphs 1-39 with same force and effect as though fully set forth herein.

51.     At all relevant times, Nutek and First Quality had a duty to exercise ordinary care in designing, manufacturing, distributing, and selling the Products, a duty avoid placing others in danger, and a duty to exercise ordinary care at all times to avoid selling contaminated baby wipes.

52.     In breach of said aforementioned duties, Nutek and First Quality acted or failed to act in one or more of the following ways:

    a.    Designed, manufactured, and sold the Products in such a way that allowed for contamination of the Products with B. cepacia;

    b.    Failed to exercise reasonable care in the design, manufacture, distribution and sale of the Products to prevent bacterial contamination;

    c.    Failed to implement adequate policies, procedures, or processes to prevent bacterial contamination of the Products;

    d.    Failed to inspect the Products before their distribution and sale to ensure that the Products were not contaminated;

    e.    Failed to timely issue a recall or otherwise notify Plaintiff and Class members after they discovered that the Products were contaminated; and

    f.    Failed to otherwise take adequate steps to avoid further injury to Plaintiff and Class members.

53.     The aforementioned actions or failures to act directly and proximately caused Plaintiff and Class members to suffer (a) physical injuries and the pain and suffering and emotional distress associated therewith; (b) financial damages; (c) medical bills; and (d) other miscellaneous incidental and consequential damages.

WHEREFORE, Plaintiff, individually and on behalf of the Classes, prays for an Order as follows:

a. Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23, and certifying the Classes defined herein;

b. Designating Plaintiff as representative of the Classes and her undersigned counsel as Class Counsel;

c. Entering judgment in favor of Plaintiff and the Class members and against Nutek and First Quality;

d. Awarding Plaintiff and the Class members actual damages, attorney's fees and costs, including interest thereon, as allowed or required by law; and

e. Granting all such further and other relief as the Court deems just and appropriate.

## <u>COUNT III</u>
### Violation of the Consumer Fraud and Deceptive Trade Practices Acts
### of the Various States and District of Columbia
### (*On behalf of Plaintiff and both Classes against Nutek and First Quality*)

54. Plaintiff repeats and realleges the allegations in Paragraphs 1 through 39 with the same force and effect as though fully set forth herein.

55. Plaintiff brings this Count individually, and on behalf of all similarly situated residents of each of the 50 states and the District of Columbia for violations of the respective statutory consumer protection laws, as follows:

a. the Alabama Deceptive Trade Practices Act, Ala.Code 1975, § 8–19–1, *et seq*.

b. the Alaska Unfair Trade Practices and Consumer Protection Act, AS § 45.50.471, *et seq*.;

c. the Arizona Consumer Fraud Act, A.R.S §§ 44-1521, *et seq*.;

d.      the Arkansas Deceptive Trade Practices Act, Ark.Code §§ 4-88-101, *et seq.*;

e.      the California Unfair Competition Law, Bus. & Prof. Code §§17200, *et seq.* and 17500 *et seq.*;

f.      the California Consumers Legal Remedies Act, Civil Code §1750, *et seq.*;

g.      the Colorado Consumer Protection Act, C.R.S.A. §6-1-101, *et seq.*;

h.      the Connecticut Unfair Trade Practices Act, C.G.S.A. § 42-110, *et seq.*;

i.      the Delaware Consumer Fraud Act, 6 Del. C. § 2513, *et seq.*;

j.      the D.C. Consumer Protection Procedures Act, DC Code § 28-3901, *et seq.*;

k.      the Florida Deceptive and Unfair Trade Practices Act, FSA § 501.201, *et seq.*;

l.      the Georgia Fair Business Practices Act, OCGA § 10-1-390, *et seq.*;

m.      the Hawaii Unfair Competition Law, H.R.S. § 480-1, *et seq.*;

n.      the Idaho Consumer Protection Act, I.C. § 48-601, *et seq.*;

o.      the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 501/1 *et seq.*;

p.      the Indiana Deceptive Consumer Sales Act, IN ST § 24-5-0.5-2, *et seq.*

q.      The Iowa Private Right of Action for Consumer Frauds Act, Iowa Code Ann. § 714H.1, *et seq.*;

r.      the Kansas Consumer Protection Act, K.S.A. § 50-623, *et seq.*;

s.      the Kentucky Consumer Protection Act, KRS 367.110, *et seq.*;

t.      the Louisiana Unfair Trade Practices and Consumer Protection Law, LSA-R.S. 51:1401, *et seq.*;

u.      the Maine Unfair Trade Practices Act, 5 M.R.S.A. § 205-A, *et seq*.;

v.      the Maryland Consumer Protection Act, MD Code, Commercial Law, § 13-301, *et seq*.;

w.      the Massachusetts Regulation of Business Practices for Consumers Protection Act, M.G.L.A. 93A, *et seq*.;

x.      the Michigan Consumer Protection Act, M.C.L.A. 445.901, *et seq*.;

y.      the Minnesota Prevention of Consumer Fraud Act, Minn. Stat. § 325F.68, *et seq*.;

z.      the Mississippi Consumer Protection Act, Miss. Code Ann. § 75-24-1, *et seq*.

aa.      the Missouri Merchandising Practices Act, V.A.M.S. § 407, *et seq*.;

bb.      the Montana Unfair Trade Practices and Consumer Protection Act of 1973, Mont. Code Ann. § 30-14-101, *et seq*.;

cc.      the Nebraska Consumer Protection Act, Neb.Rev.St. §§ 59-1601, *et seq*.;

dd.      the Nevada Deceptive Trade Practices Act, N.R.S. 41.600, *et seq*.

ee.      the New Hampshire Regulation of Business Practices for Consumer Protection, N.H.Rev.Stat. § 358-A:1, *et seq*.;

ff.      the New Jersey Consumer Fraud Act, N.J.S.A. 56:8, *et seq*.;

gg.      the New Mexico Unfair Practices Act, N.M.S.A. §§ 57-12-1, *et seq*.;

hh.      the New York Consumer Protection from Deceptive Acts and Practices, N.Y. GBL (McKinney) § 349, *et seq*.;

ii.      the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen Stat. § 75-1.1, *et seq*.;

jj.      the North Dakota Consumer Fraud Act, N.D. Cent.Code Chapter 51-15, *et seq*.;

kk.     the Ohio Consumer Sales Practices Act, R.C. 1345.01, *et seq*.;

ll.     the Oklahoma Consumer Protection Act, 15 O.S.2001, §§ 751, *et seq*.;

mm.     the Oregon Unlawful Trade Practices Act, ORS 646.605, *et seq*.;

nn.     the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1, *et seq*.;

oo.     the Rhode Island Deceptive Trade Practices Act, G.L.1956 § 6-13.1-5.2(B), *et seq*.;

pp.     the South Carolina Unfair Trade Practices Act, SC Code 1976, §§ 39-5-10, *et seq*.;

qq.     the South Dakota Deceptive Trade Practices and Consumer Protection Act, SDCL § 37-24-1, *et seq*.;

rr.     the Tennessee Consumer Protection Act, T.C.A. § 47-18-101, *et seq*.;

ss.     the Texas Deceptive Trade Practices-Consumer Protection Act, V.T.C.A., Bus. & C. § 17.41, *et seq*.;

tt.     the Utah Consumer Sales Practices Act, UT ST § 13-11-1, *et seq*.;

uu.     the Vermont Consumer Fraud Act, 9 V.S.A. § 2451, *et seq*.;

vv.     the Virginia Consumer Protection Act of 1977, VA ST § 59.1-196, *et seq*.;

ww.     the Washington Consumer Protection Act, RCWA 19.86.010, *et seq*.;

xx.     the West Virginia Consumer Credit And Protection Act, W.Va.Code § 46A-1-101, *et seq*.;

yy.     the Wisconsin Deceptive Trade Practices Act, WIS.STAT. § 100.18, *et seq*.; and

zz.     the Wyoming Consumer Protection Act, WY ST § 40-12-101, *et seq*.

56.     Nutek and First Quality's misrepresentations about the Products being "hypoallergenic," as well as their failure to disclose the presence of harmful B. cepacia bacteria on the Products, are deceptive and/or unfair acts or practices prohibited by the consumer fraud statutes set forth above.

57.     Nutek and First Quality intended to be deceptive and/or unfair to Plaintiff and the Class members by intentionally making the foregoing false and misleading statements and omitting accurate statements as alleged above, because had Nutek and First Quality provided accurate information, Plaintiff and the Class members would not have purchased the Products.

58.     Nutek and First Quality's practice of creating and approving marketing and advertising statements regarding the Products that contained false and misleading representations is both an unfair act and deceptive practice prohibited by the foregoing statutes.

59.     Nutek and First Quality intended to be deceptive and unfair to Plaintiff and the Class members by unlawfully representing that the Products were "hypoallergenic," and therefore safe to use.  Nutek and First Quality's intent is evidenced by, *inter alia*, their prominent advertising of the Products as "hypoallergenic" on the packaging of the Products.  Defendants continued to make this misrepresentation after they knew of the presence of B. cepacia bacteria on the Products.

60.     Nutek and First Quality intended that Plaintiff and the Class members rely on their misrepresentations as to the safety of the Products when purchasing them, and Defendants omitted to disclose to or notify Plaintiff and the Class members of the presence of B. cepacia bacteria on the Products after they knew of the presence of B. cepacia bacteria on the Products.

61.     Plaintiff and the Class members justifiably relied on the misrepresentations and omissions to their detriment by purchasing the Products after seeing the packaging of the

16

Products. Indeed, Nutek and First Quality made no attempt to inform consumers that the Products were not safe or that they could contain harmful bacteria, until long after Plaintiff and Class members made their purchases and long after Defendants knew of the presence of B. cepacia bacteria on the Products.

62. Had Plaintiff and the Class members known the truth, they would not have purchased the Products.

63. The above-described deceptive and unfair acts and practices were used or employed in the conduct of trade or commerce, namely, the sale of the Products to Plaintiff and the Class members.

64. The above-described deceptive and unfair acts offend public policy and cause substantial injury to consumers.

65. As a direct and proximate result of the foregoing, the Plaintiff and Class members have been damaged in an amount to be determined at trial, including (a) physical injuries and the pain and suffering and emotional distress associated therewith; (b) financial damages; (c) medical bills; and (d) other miscellaneous incidental and consequential damages.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Classes, prays for an Order as follows:

     a.      Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23, and certifying the Classes defined herein;

     b.      Designating Plaintiff as representative of the Classes, and her undersigned counsel as Class Counsel;

     c.      Entering judgment in favor of Plaintiff and the Class members and against Defendants;

d.    Enjoining Defendants' illegal conduct and ordering them to cease any and all deceptive and unfair trade practices;

e.    Awarding Plaintiff and the Class members restitution and any other equitable relief that may be appropriate;

f.    Awarding Plaintiff and the Class members their actual damages, punitive damages, attorney's fees and costs, including interest thereon, as allowed or required by law; and

g.    Granting all such further and other relief as the Court deems just and appropriate.

## COUNT IV
### Negligence
***(On behalf of Plaintiff and both Classes against Family Dollar)***

66.    Plaintiff repeats and re-alleges the allegations in Paragraphs 1-39 with the same force and effect as though fully set forth herein.

67.    At all relevant times, Family Dollar had a duty to exercise ordinary care in ensuring that items it sells are safe; a duty to exercise ordinary care at all times to avoid selling Products to the public, including Kidgets baby wipes, that it either knew or should have known were defective and/or dangerous; and a duty to timely inform customers of the dangerous condition of products it sells when it learns of that dangerous condition.

68.    In breach of said aforementioned duties, Family Dollar acted or failed to act in one or more of the following ways:

a.    Failed to exercise reasonable care to ensure that it would not sell dangerous and defective products to the public, including contaminated Kidgets baby wipes;

b.    Failed to implement adequate policies, procedures, or processes to prevent the sale of dangerous and defective products to the public, including contaminated Kidgets baby wipes;

c.    Failed to timely issue a recall or otherwise notify Plaintiff and Class members after it either knew or should have known that the Kidgets baby wipes were contaminated; and

d.    Failed to otherwise take adequate steps to avoid injury to Plaintiff and Class members.

69.    The aforementioned actions or failures to act directly and proximately caused Plaintiff and Class members to suffer (a) physical injuries and the pain and suffering and emotional distress associated therewith; (b) financial damages; (c) medical bills; and (d) other miscellaneous incidental and consequential damages.

WHEREFORE, Plaintiff, individually and on behalf of the Classes, prays for an Order as follows:

a.    Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23, and certifying the Classes defined herein;

b.    Designating Plaintiff as representative of the Classes and her undersigned counsel as Class Counsel;

c.    Entering judgment in favor of Plaintiff and the Class members and against Family Dollar;

d.    Awarding Plaintiff and the Class members actual damages, attorney's fees and costs, including interest thereon, as allowed or required by law; and

e.    Granting all such further and other relief as the Court deems just and appropriate.

## COUNT V
### Breach of Express Warranty
***(On behalf of Plaintiff and the Economic Damages Class against all Defendants)***

70.    Plaintiff repeats and realleges the allegations in Paragraphs 1-39 with the same force and effect as though fully set forth herein.

71.    Defendants are and at all relevant times were "merchants" within the meaning of the Uniform Commercial Code ("UCC").

72.    Defendants marketed and sold certain Products, including Kidgets baby wipes, which are "goods" within the meaning of the UCC and other applicable commercial codes.

73.    In connection with the sale of certain Products, including Kidgets baby wipes, Defendants made express warranties to consumers, as defined under the UCC and other applicable state commercial codes, that the Products were "hypoallergenic" baby wipes.  That express warranty offers an objective description of the baby wipes, and informs the consumer of the specific functions that the baby wipes were designed to perform.

74.    The Products were not altered by Plaintiff or Class members at any time.

75.    The Products were defective when they left the exclusive control of Defendants.

76.    Defendants breached the above express warranties by failing to satisfy their obligations under the express warranty, inasmuch as the Products were in fact not suitable for cleaning or care because they were tainted with harmful bacteria.

77.    Defendants directly misrepresented to consumers that the Products were not defective.

78.    Defendants knew or should have known of the defect in the Products at the time of sale to Plaintiff and the Class members.

79.    As a direct and proximate cause of Defendants' breach of express warranty, Plaintiff and Class members have sustained damages, including an economic loss equal to the total purchase price of these unfit Products, consequential and incidental damages for exposure to the harmful and hazardous B. cepacia bacteria and an increased risk of adverse health effects, as well as other consequential and incidental damages, in the aggregate, in excess of $5 million.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Economic Damages Class, prays for an Order as follows:

      a.      Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed.  R.  Civ.  P.  23, and certifying the Economic

Damages Class defined herein;

b.     Designating Plaintiff as representative of the Economic Damages Class, and her undersigned counsel as Class Counsel;

c.     Entering judgment in favor of Plaintiff and the Economic Damages Class members and against Defendants;

d.     Awarding Plaintiff and the Economic Damages Class members restitution and any other equitable relief that may be appropriate;

e.     Awarding Plaintiff and the Economic Damages Class members their actual damages, attorney's fees and costs, including interest thereon, as allowed or required by law; and

f.     Granting all such further and other relief as the Court deems just and appropriate.

### COUNT VI
**Breach of Implied Warranty of Merchantability**
(***On behalf of Plaintiff and the Economic Damages Class against all Defendants***)

80.    Plaintiff repeats and realleges the allegations in Paragraphs 1-39 with the same force and effect as though fully set forth herein.

81.    Defendants, as the marketers and sellers of certain Products, including Kidgets baby wipes, impliedly warranted that they were of merchantable quality and, among other warranties, that the Products would pass without objection in the trade or industry and were fit for the ordinary purpose for which those products are used, such as cleaning the skin of babies, children, and adults.

82.    Because of the contamination of the Products with harmful bacteria, the Products cannot perform their ordinary purpose and would not pass without objection in the trade and industry.

83.     Defendants breached their implied warranties by selling, marketing, and promoting the Products with a defect that consisted of the harmful and hazardous B. cepacia bacteria.

84.     Defendants directly misrepresented to consumers that the Products were not defective.

85.     Defendants knew or should have known of the defect in the Products at the time of sale to Plaintiff and the Class members.

86.     As a direct and proximate cause of Defendants' breach of implied warranty of merchantability, Plaintiff and Class members have sustained damages, including an economic loss equal to the total purchase price of these unfit Products, consequential and incidental damages for exposure to the harmful and hazardous B. cepacia bacteria and an increased risk of adverse health effects, as well as other consequential and incidental damages, in the aggregate, in excess of $5 million.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Economic Damages Class, prays for an Order as follows:

a.     Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23, and certifying the Economic Damages Class defined herein;

b.     Designating Plaintiff as representative of the Economic Damages Class, and her undersigned counsel as Class Counsel;

c.     Entering judgment in favor of Plaintiff and the Economic Damages Class members and against Defendants;

d.     Awarding Plaintiff and the Economic Damages Class members restitution and any other equitable relief that may be appropriate;

e.     Awarding Plaintiff and the Economic Damages Class their actual damages and attorney's fees and costs, including interest thereon, as allowed or required by law; and

f.     Granting all such further and other relief as the Court deems just and appropriate.

## COUNT VII
**Breach of Implied Warranty of Fitness for a Particular Purpose**
***(On behalf of Plaintiff and the Economic Damages Class against all Defendants)***

87.     Plaintiff repeats and realleges the allegations in Paragraphs 1-39 with the same force and effect as though fully set forth herein.

88.     Defendants marketed and sold certain Products, including Kidgets baby wipes, with implied warranties that they were fit for the particular purpose of cleaning the skin of babies, children, and adults.

89.     At the time the Products were sold, Defendants knew or should have known that Plaintiff and the Class members would rely on Defendants' skill and judgment regarding the efficacy and quality of the Products, including their cleaning properties.

90.     Plaintiff and Class members purchased the Products in reliance on Defendants' skill and judgment as well as the implied warranties of fitness for a particular purpose.

91.     The Products were defective immediately upon purchase by Plaintiff and Class members when they left the exclusive control of Defendants, and therefore Defendants breached the implied warranty of fitness for a particular purpose to Plaintiff and the Class members.

92.     Defendants knew or should have known of the defect in the Products at the time of sale to Plaintiff and the Class members.

93.     As a direct and proximate cause of Defendants' breach of implied warranty of merchantability, Plaintiff and Class members have sustained damages, including an economic loss equal to the total purchase price of these unfit Products, consequential and incidental

damages for exposure to the harmful and hazardous B. cepacia bacteria and an increased risk of adverse health effects, as well as other consequential and incidental damages, in the aggregate, in excess of $5 million.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Economic Damages Class, prays for an Order as follows:

a. Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23, and certifying the Economic Damages Class defined herein;

b. Designating Plaintiff as representative of the Economic Damages Class, and her undersigned counsel as Class Counsel;

c. Entering judgment in favor of Plaintiff and the Economic Damages Class members and against Defendants;

d. Awarding Plaintiff and the Economic Damages Class members restitution and any other equitable relief that may be appropriate;

e. Awarding Plaintiff and the Economic Damages Class members their actual damages, attorney's fees and costs, including interest thereon, as allowed or required by law; and

f. Granting all such further and other relief as the Court deems just and appropriate.

## JURY DEMAND

Plaintiff demands a trial by jury on all counts so triable.

Plaintiff KRISTIN TRAVIS, individually; as parent, guardian, and next friend of KALIYAH WOODS, a minor; and on behalf of all others similarly situated,

By: _s/Thomas A. Zimmerman, Jr._
    Thomas A. Zimmerman, Jr. (IL #6231944)
    *tom@attorneyzim.com*

Adam M. Tamburelli (IL #6292017)
*adam@attorneyzim.com*
Frank J. Stretz (IL #6310264)
*frank@attorneyzim.com*
ZIMMERMAN LAW OFFICES, P.C.
77 West Washington Street, Suite 1220
Chicago, Illinois 60602
(312) 440-0020 telephone
(312) 440-4180 facsimile
www.attorneyzim.com

Counsel for the Plaintiff and Putative Class